UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
KEVANTE LOVING,

                                   Plaintiff,

       - against -

TROOPER PATRICK PORTEUS, and TROOPER
PETER VITI, and TROOPER EDWARD REISER,
Individually and as Employees of the State of New
York,

                                  Defendants.
-------------------------------------------------------------x

**OPINION & ORDER
ON MOTION FOR SUMMARY
JUDGMENT**

No. 24-CV-5789 (CS)

<u>Appearances:</u>

Ryanne Konan
Ryanne Konan Law Office and Legal Services
Wappingers Falls, New York
*Counsel for Plaintiff*

Christopher J. Byrne
Assistant Attorney General
New York, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

       Before the Court is Defendants' motion for summary judgment.  (ECF No. 41.)  For the

following reasons, Defendants' motion is GRANTED.

I.      **BACKGROUND**

The following facts are taken from Defendants' Local Civil Rule 56.1 Statement, (ECF No. 43 ("Ds' 56.1 Stmt.")), Plaintiff's response to Defendants' 56.1 Statement, (ECF No. 47 ("P's 56.1 Resp.")), and the supporting exhibits, and are undisputed unless otherwise noted.[1]

A.      **Facts**

On July 24, 2024, Plaintiff Kevante Loving was driving a black Mercedes sedan southbound on Innis Avenue in Poughkeepsie, New York.  (Ds' 56.1 Stmt. ¶¶ 1, 6.)  Defendants New York State Troopers Peter Viti and Edward Reiser were monitoring traffic when they saw Plaintiff's vehicle.  (*Id.* ¶ 2.)  Troopers Viti and Reiser initiated a traffic stop near 134 Innis Avenue because they believed the windows on Plaintiff's vehicle to be illegally tinted based on how dark they appeared.  (*Id.*)  Trooper Reiser is not issued a tint meter but was trained to visually identify illegally tinted sedan side windows, which he stated cannot be tinted past 70% light transparency.  (*Id.* ¶ 3.)

---

[1] Some of Plaintiff's responses to Defendants' 56.1 statements merely add facts, (*e.g.*, P's 56.1 Resp. ¶¶ 9, 16), or deny Defendants' statements without citing to admissible evidence, (*e.g.*, *id.* ¶ 14), which is insufficient to dispute that statement, *see, e.g.*, *Espinoza v. Foundry Workers LLC*, 792 F. Supp. 3d 344, 347 n.2 (E.D.N.Y. 2025) (court deems facts undisputed where party denies without citing to admissible evidence); *Ward v. Nassau County*, 15-CV-4309, 2023 WL 5417329, at *1 (E.D.N.Y. Aug. 22, 2023) ("A party may not rest on a mere denial without citing supporting admissible evidence."); *Kesner v. Buhl*, 590 F. Supp. 3d 680, 690-91 (S.D.N.Y. 2022) (court must disregard responses that do not cite evidence in record), *aff'd sub nom.*, *Kesner v. Dow Jones & Co.*, No. 22-875, 2023 WL 4072929 (2d Cir. June 20, 2023) (summary order); *Johnson v. City of N.Y.*, No. 15-CV-6915, 2019 WL 294796, at *10 n.8 (S.D.N.Y. Jan. 23, 2019) ("56.1 statements not explicitly denied by plaintiff are deemed admitted."); *Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012) (improper to "interject[ ] arguments and/or immaterial facts in response to facts asserted by Defendant, without specifically controverting those facts").  Accordingly, any of Defendants' 56.1 statements, or any portion thereof, that are properly supported and that Plaintiff does not specifically deny with evidence are deemed admitted for purposes of this motion.  *See Universal Calvary Church v. City of N.Y.*, No. 96-CV-4606, 2000 WL 1745048, at *2 n.5 (S.D.N.Y. Nov. 28, 2000).

2

Trooper Reiser approached Plaintiff's vehicle and further observed the tinted windows, as well as an electronically-operated license plate cover and Plaintiff's South Dakota license plates. (*Id.* ¶¶ 4-5.)  When Trooper Reiser asked Plaintiff where he was going, Plaintiff stated he was going to KFC on his way home to Connecticut from work at St. Luke's hospital in Newburgh, New York.  (*Id.* ¶ 6.)  Defendants also learned that Plaintiff had a Connecticut driver's license but that his car was registered in South Dakota, which he stated was because South Dakota had cheaper insurance.  (*Id.* ¶ 7.)  Trooper Reiser contacted his unit for assistance with the stop, and Defendant New York State Trooper Patrick Porteus, the only other member of the unit working that day, arrived.  (*Id.* ¶ 8.)  Trooper Porteus did not know who the other Defendants had pulled over until he arrived on scene.  (*Id.* ¶ 9.)

Trooper Reiser became suspicious of criminal activity during the traffic stop because:  (1) Plaintiff's car had tinted windows; (2) Plaintiff had an electronic plate cover which Trooper Reiser knew to be commonly used by people who commit crimes; (3) Plaintiff's route of travel (to Connecticut from Newburgh via a southbound road in Poughkeepsie) did not make sense; (4) Trooper Reiser knew from previous investigations that Plaintiff resided in or was associated with several residences in the Town of LaGrange in Dutchess County, New York, but Plaintiff had a Connecticut driver's license; (5) Trooper Reiser knew that an incarcerated individual had communicated with Plaintiff about brokering a large amount of cocaine from the incarcerated individual's girlfriend to a third party, and Trooper Reiser had conducted another traffic stop in relation to those phone calls in which he seized over 100 grams of cocaine from a suspect; (6) Plaintiff had a South Dakota license plate and registration even though he did not live in South Dakota; (7) within the prior year, Trooper Reiser had arrested the operator of a stolen Mercedes with a Wisconsin wholesaler license plate that belonged to Plaintiff's LLC, Loving Fast Cars,

near the same area in Poughkeepsie; and (8) there was an odometer discrepancy, as Plaintiff's car had approximately 180,000 miles on it but it had been reported over a year earlier that the car's mileage was 190,000.  (*Id.* ¶ 10.)

As such, Trooper Reiser decided to bring his canine, K-9 Dunn, to sniff around the outside of Plaintiff's vehicle.  (*Id.* ¶ 11.)  K-9 Dunn was in Defendants' vehicle at the time of the stop and was trained to alert his handler, Trooper Reiser, to the presence of narcotic odors.  (*Id.* ¶¶ 2, 11-12.)  Although Troopers Viti and Porteus had either been K-9 handlers themselves or observed K-9 handlers in their careers, (ECF No. 44-7 ("Porteus Depo.") at 11:8-14; ECF No. 44-2 ("Viti Depo.") at 9:6-8), only a K-9's assigned handler can determine whether a K-9 alerts, (Ds' 56.1 Stmt. ¶ 13).  Trooper Reiser walked K-9 Dunn around the outside of Plaintiff's vehicle and observed K-9 Dunn's tail start flailing up and down, a change in his breathing pattern, and quick snapping movements back and forth by the driver's side door seam.  (*Id.* ¶¶ 14-15.)  Defendants allege that Trooper Reiser also observed K-9 Dunn scratch on the driver's side door seam, which would constitute a final response to the presence of a narcotic odor, (*id.* ¶ 14), but Plaintiff disputes this allegation, (P's 56.1 Resp. ¶¶ 14-15).  Trooper Viti, Trooper Porteus and Plaintiff were all on the other side of the car from K-9 Dunn at the time of the scratch, and thus Defendants allege they could not see the scratch.  (Ds' 56.1 Stmt. ¶ 16.)

Following the alleged scratch, Defendants searched Plaintiff's vehicle but did not find any drugs.  (*Id.* ¶ 17.)  Defendants did not issue any tickets, and Plaintiff was allowed to leave.  (*Id.*)  The stop lasted approximately forty minutes.  (*Id.* ¶ 18.)

**B.** **Procedural History**

Plaintiff filed his complaint on August 1, 2024.  (ECF No. 4.)  After Defendants answered on November 20, 2024, (ECF No. 11), Plaintiff filed an amended complaint on

February 5, 2025, (ECF No. 15 ("AC")).  Defendants answered on March 24, 2025, (ECF No. 30), and the Court held an initial conference on April 23, 2025, (*see* Minute Entry dated Apr. 23, 2025).  Following discovery, Defendants filed a pre-motion letter in anticipation of their motion for summary judgment.  (ECF No. 39.)  The Court held a pre-motion conference on October 30, 2025.  (*See* Minute Entry dated Oct. 30, 2025.)  The instant motion followed.  (ECF No. 41.)

After Plaintiff filed his opposition, Defendants requested that the Court strike Plaintiff's Exhibit 3 as its use in this case violated a Confidentiality Stipulation and Protective Order in another matter.  (ECF No. 50.)  The Court granted Defendants' request and ruled that it would disregard the exhibit in deciding the motion.  (ECF No. 53.)

## II.  <u>LEGAL STANDARD</u>

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[2]  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255; *see Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) ("When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor.").  "Assessments of credibility and choices between

---

[2] Unless otherwise indicated, all case quotations omit internal citations, quotation marks, alterations and footnotes.

conflicting versions of the events are matters for the jury, not for the court on summary

judgment." *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996).

The movant bears the initial burden of demonstrating "the absence of a genuine issue of

material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence

sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d

Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The mere existence of a

scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be

evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at

252. Moreover, the non-movant "must do more than simply show that there is some

metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated

speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

"A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by . . . citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations . . . ,

admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where a

declaration is used to support or oppose the motion, it "must be made on personal knowledge, set

out facts that would be admissible in evidence, and show that the . . . declarant is competent to

testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino,

Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). "If a party fails . . . to properly address another party's

assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for

purposes of the motion" or "grant summary judgment if the motion and supporting materials –

including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e).

## III.    DISCUSSION

### A.    Initial Traffic Stop

Defendants argue that they are entitled to summary judgment on Plaintiff's false arrest claim based on the initial traffic stop.  (ECF No. 42 ("Ds' Mem.") at 6-8; *see* AC ¶¶ 13-24 (alleging initial stop was not based on probable cause).)  Plaintiff argues that Defendants are not entitled to summary judgment because they did not have probable cause to stop Plaintiff's vehicle and there are genuine issues of material fact as to the reason for the stop.  (ECF No. 46 ("P's Opp.") at 11-12.)

"The temporary detention of an individual during a traffic stop is subject to limitation under the Fourth Amendment as a 'seizure' of the person."  *Holeman v. City of New London*, 425 F.3d 184, 189 (2d Cir. 2005).  "An officer needs reasonable suspicion of a traffic violation to make a traffic stop."  *United States v. Burt*, No. 23-6020, 2024 WL 3244380, at *2 (2d Cir. July 1, 2024) (summary order).  "The reasonable suspicion standard is not high and is less demanding than probable cause," *United States v. Martinez-Rodriguez*, 798 F. Supp. 3d 289, 295 (N.D.N.Y. 2025), but nevertheless "requires more than an inchoate suspicion or mere hunch," *United States v. Overton*, No. 24-CR-2071, 2025 WL 2753628, at *1 (2d Cir. Sept. 29, 2025) (summary order). "Reasonable suspicion demands specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting legal wrongdoing."  *United States v. Wallace*, 937 F.3d 130, 138 (2d Cir. 2019). Thus, "in assessing reasonable suspicion, courts look at the totality of the circumstances through

7

the eyes of a reasonable and cautious police officer on the scene, whose insights are necessarily guided by his experience and training." *Overton*, 2025 WL 2753628, at *1.

Defendants Reiser and Viti testified that they stopped Plaintiff because they believed that his vehicle's windows were illegally tinted. (Viti Depo. at 15:3-15, 33:20-22, 50:4-6; ECF No. 44-1 ("Reiser Depo.") at 23:21-24:17.) "Driving a car with excessively tinted windows is illegal under New York Law." *United States v. Garcia*, 279 F. Supp. 2d 294, 299 (S.D.N.Y. 2003) (citing N.Y. Veh. & Traf. L. § 375(12-a)(b) (windshield and front and rear side windows on sedan must have light transmittal of at least 70%)). Thus, "officers have probable cause to arrest an individual for excessively tinted windows [or to stop their vehicle] when they reasonably believe that the windows are excessively tinted and provide facts on which that conclusion is based." *Smith v. City of New Rochelle*, No. 24-CV-9899, 2026 WL 776028, at *9 (S.D.N.Y. Mar. 19, 2026).

Testimony that an officer, based on his training and experience, believed that the windows were illegally tinted because he could not see into the vehicle is sufficient to establish an objectively reasonable belief. *See People v. Biggs*, 175 N.Y.S.3d 117, 121 (App. Div. 2022); *Forbes v. Doe*, No. 18-CV-6700, 2024 WL 329080, at *5 (W.D.N.Y. Jan. 29, 2024); *Mohamed v. Town of N. Greenbush*, No. 13-CV-428, 2016 WL 3448616, at *10 (N.D.N.Y. June 20, 2016); *see also Djangmah v. Falcione*, No. 08-CV-4027, 2013 WL 208914, at *11 (S.D.N.Y. Jan. 18, 2013) (officer's testimony that he believed window tint to be in violation of traffic law because in his experience vehicle is unlikely to be in compliance if tint is visible from distance was sufficient to demonstrate objectively reasonable belief), *report and recommendation adopted*, 2013 WL 1195261 (S.D.N.Y. Mar. 25, 2013); *Flowers v. Rustand*, No. 11-CV-1801, 2012 WL 4567596, at *3-4 (E.D.N.Y. Oct. 1, 2012) (defendants entitled to summary judgment even

8

though plaintiff claimed windows were only mildly tinted because plaintiff conceded windows were tinted and officers are allowed to make reasonable judgment call in concluding tinted windows were sufficient to warrant stop).  Trooper Reiser testified that he observed dark side tinted windows that he believed were in violation of New York's traffic laws based on his training on visually identifying illegal tints and the fact that he could not clearly see the interior of the vehicle through the windows.  (*See* Reiser Depo. at 10:9-13:5, 23:21-24:17.)  Trooper Viti testified similarly.  (*See* Viti Depo. at 12:5-13:1 (explaining experience with traffic stops and identifying illegal window tints); *id.* at 15:3-7 (describing the window tints as "very dark"); *id.* at 50:4-10 (Viti believed Plaintiff's windows were illegally tinted based on experience).)  Thus, Defendants provided specific facts on which their conclusion that the windows were excessively tinted was based, which is sufficient to demonstrate the reasonableness of their belief.

Nevertheless, Plaintiff contests the reasonableness of Defendants' belief – and consequently whether Defendants had reasonable suspicion of a traffic violation – because he disputes the opacity of the tints.  Plaintiff and his partner, Cleopatra Sharp, testified that one can see into the car despite the tints, (ECF No. 45 at 7-28 ("Sharp Depo.") at 20:22-21:5 (windows not tinted to point that one cannot see driver)[3]; ECF No. 45 at 3-6 ("P's Decl.") ¶¶ 2, 12 (tint does not prevent visibility into vehicle)), but that is not sufficient to create a genuine issue of material fact.  First, that the tint was not so dark as to wholly prevent visibility into the vehicle does not mean that it allowed light transparency of 70% or more, or that an officer, observing the vehicle from a distance, would not reasonably suspect that it did not.  *See Djangmah*, 2013 WL

---

[3] References to ECF No. 45 generally refer to the page numbers generated by the Court's Electronic Case Filing system.  Citations to the Sharp Deposition, on pages 7-28 of ECF No. 45, use the internal pagination of the deposition transcript.  Citations to Plaintiff's Declaration, on pages 3-6 of ECF No. 45, use the internal paragraph numbers.

208914, at *11; *Flowers*, 2012 WL 4567596, at *3-4.  Second, the body-worn camera footage

from the stop[4] specifically shows that the tints were so dark that the interior of the vehicle was

not clearly visible[5] and that instead the officers' reflections were visible in the windows.  (*See,*

*e.g.*, Reiser Body Cam at 19:18:44-52, 19:27:43-45, 19:28:40-29:58, 19:30:44-54, 19:31:11-17,

19:36:36-38; ECF No. 44-5 ("Viti Body Cam") at 19:18:48-57, 19:36:55-37:49; ECF No. 44-6

("Porteus Body Cam") at 19:27:44-46, 19:27:49-51, 19:28:26-27, 19:28:48-49, 19:29:05-09,

19:36:02-03.)  This evidence is consistent with the officers' testimony and is sufficient to

overcome Plaintiff's and his partner's testimony that generally one could see into the interior

through the windows.  *See Monahan v. City of N.Y.*, No. 20-CV-2610, 2022 WL 954463, at *4

(S.D.N.Y. Mar. 30, 2022) ("[V]ideo evidence may be so clear and unambiguous that a court

deciding a summary judgment motion may rely solely on the video, and need not afford weight

to conclusory or non-credible assertions that are inconsistent with the blatant video evidence."),

*reconsideration denied*, 2023 WL 2138535 (S.D.N.Y. Feb. 21, 2023); *Tyus v. Newton*, No. 13-

CV-1486, 2016 WL 6090719, at *11 (D. Conn. Oct. 18, 2016) (stop did not violate Fourth

Amendment where video established that officer could see that plaintiff had tinted windows);

*Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 216 (E.D.N.Y. 2015) (granting

summary judgment where photos indisputably supported defendants' testimony), *aff'd sub nom.*,

*Bartels v. Schwarz*, 643 F. App'x 54 (2d Cir. 2016) (summary order); *cf. United States v.*

*Brandon*, No. 22-CR-239, 2023 WL 6961937, at *17 (D. Md. Oct. 19, 2023) (officer had

---

[4] The encounter occurred in the early evening in July while it was still light out and the quality of the footage is good.

[5] Indeed, as he approached the car, Trooper Reiser asked Plaintiff to roll down the rear windows, (ECF No. 44-4 ("Reiser Body Cam") at 19:18:44-53), apparently to be able to see if anyone else was in the car.  (Citations to the officers' body camera videos use the time-of-day stamp in the top right-hand corner of the videos.)

reasonable, articulable suspicion that tint did not comply with state law where photo of vehicle showed tinting consistent with defendant's description and body camera video showed officer's reflection in window), *aff'd*, No. 24-4422, 2026 WL 483440 (4th Cir. Feb. 20, 2026) (*per curiam*); *United States v. Pullen*, No. 20-CR-195, 2022 WL 4586177, at *3-4 (E.D. Cal. Sept. 29, 2022) (officers had reasonable suspicion vehicle had illegally tinted windows where videos from body cam footage and photos showed tinting and officers testified that they could not see clearly into vehicle and only saw silhouettes), *aff'd*, No. 23-10036, 2024 WL 2843036 (9th Cir. June 5, 2024).[6]

Plaintiff also argues that Defendants stopped him not because of his tints, but because he is a Black man and because they recognized him and decided to pull him over to search him. (P's Opp. at 6, 11-12; P's Decl. ¶¶ 5, 10-13.)  As an initial matter, that Defendants stopped Plaintiff because of his race is pure speculation.  *See Hereford v. City of Hemet*, 791 F. Supp. 3d 1126, 1145-46 (C.D. Cal. 2025) (that plaintiff was "a black man driving a newer car in a predominately African American neighborhood" was not sufficient to dispute defendant's uncontroverted testimony that he noticed plaintiff's missing license plate when he drove past him); *cf. Brannon v. Delta Airlines, Inc.*, 434 F. Supp. 3d 124, 134 (S.D.N.Y. 2020) (plaintiff "relies on pure speculation and conjecture to assert that, because he is an African-American man, the [defendants'] actions . . . must have been motivated by their discriminatory biases against African Americans").  And it is undisputed that Troopers Reiser and Viti had never met Plaintiff before this stop, and that Trooper Reiser, who initiated the stop, did not know what Plaintiff

---

[6] Even if one could see into Plaintiff's car if one peered inside from close up, that would not render unreasonable the officers' suspicion based on what they could perceive while the vehicle was in motion and they decided to initiate the stop.  But in any event, the video footage makes clear that even close up, the windows were so dark that they reflected the officers' images even in daylight.

looked like before he pulled him over. (*See* Reiser Depo. at 31:9-13; ECF No. 44-3 ("P's Depo.") at 51:10-18.) Thus, there is no evidence to support Plaintiff's claim that Defendants initiated the stop because they saw him through the windows or recognized him. (*See* P's Decl. ¶¶ 5, 12.) Although Trooper Porteus had interacted with Plaintiff before this stop, (P's Depo. at 17:3-22:20; Porteus Depo. at 16:19-25), he was not present when the other Defendants initiated the stop, (P's Depo. at 22:3-13, 33:18-24; Reiser Depo. at 35:14-36:14).[7] Plaintiff simply has no facts supporting his allegation that his skin color motivated the stop. *See Viator v. City of Rochester*, No. 02-CV-6453, 2005 WL 1876064, at *6 (W.D.N.Y. Aug. 8, 2005) ("No reasonable inference can be made from [the fact plaintiff is Black] alone that the sole reason for the traffic stop was the color of his skin.").

To the extent Plaintiff contends that the officers recognized Plaintiff and wanted to search him or his car for evidence of a crime based on "prior encounters" or "the information they had on [him]," (P's Decl. ¶¶ 10, 13), "the actual reason [Plaintiff] was stopped by the police is irrelevant to determining whether adequate probable cause supported the stop, as whether a traffic stop is reasonable under the Fourth Amendment does not depend on the actual motivations of the individual officers involved," *United States v. Lucas*, No. 19-3937-CR, 2021 WL 3700944, at *1 n.1 (2d Cir. Aug. 20, 2021) (summary order). As such, "a vehicle stop is constitutionally reasonable when an officer has observed a traffic violation, even if the officer subjectively held an ulterior motive to make the stop" – in other words, even if the stop is pretextual. *Robles v. Salvati*, 640 F. Supp. 3d 224, 229 (D. Conn. 2022) (citing *Whren v. United*

---

[7] Trooper Porteus is also entitled to summary judgment on Plaintiff's false arrest claim based on the initial stop because he was not personally involved in the decision to stop Plaintiff, as it is undisputed that he did not arrive on scene until later. (P's Depo. at 22:3-8, 33:18-24; Reiser Depo. at 35:14-36:14; Porteus Depo. at 16:12-15; P's Opp. at 5.)

*States*, 517 U.S. 806, 810, 813 (1996)); *see Forbes*, 2024 WL 329080, at *5 ("[S]topping a

vehicle based upon probable cause or reasonable suspicion that a vehicle is being operated with

tinted windows in violation of § 375(12-a)(b)(2), even if the officers' true motivations are driven

by a desire to investigate other illegal activity, complies with the Fourth Amendment.").

Accordingly, because no reasonable jury could find that Defendants did not have at least

reasonable suspicion that Plaintiff's windows were tinted in violation of New York's traffic laws,

the initial stop would not violate Plaintiff's Fourth Amendment rights even if it were a pretext to

investigate something else.

In the alternative, even if Defendants lacked reasonable suspicion of a traffic violation,

they are entitled to qualified immunity.

> A defendant is entitled to qualified immunity if (1) the defendant's conduct does
> not violate clearly established statutory or constitutional rights of which a
> reasonable person would have known, or (2) it was objectively reasonable for the
> defendant to believe that his actions were lawful at the time of the challenged act.

*Brandon v. Kinter*, 938 F.3d 21, 39 (2d Cir. 2019). "'Clearly established law' should not be

defined 'at a high level of generality,'" and while the court does not need to identify a case

"directly on point, . . . existing precedent must have placed the statutory or constitutional

question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft v. al-Kidd*,

563 U.S. 731, 742 (2011)). "In determining if a right is clearly established, this Court looks to

whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit

has confirmed the existence of the right, and (3) a reasonable defendant would have understood

that his conduct was unlawful." *Nat'l Rifle Ass'n of Am. v. Vullo*, 144 F.4th 376, 390 (2d Cir.

2025). "An official is thus qualifiedly immune from liability unless, under the particular

circumstances the official faced, any reasonable official would have known for certain that the

conduct was unlawful under then-existing precedent." *Id.* Thus, "'[w]hen properly applied,

13

[qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law.'" *Matusak v. Daminski*, 165 F.4th 702, 711 (2d Cir. 2026) (quoting *al-Kidd*, 563 U.S. at 743); *see Berg v. Kelly*, 897 F.3d 99, 109 (2d Cir. 2018).  "[Q]ualified immunity's protections apply regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.  Any mistake, however, must be reasonable." *Matusak*, 165 F.4th at 711.

When police officers "conduct a limited investigative detention, they have qualified immunity so long as they had at least *arguable* reasonable suspicion to warrant the limited detention." *See Kistner v. City of Buffalo*, No. 21-CV-526, 2023 WL 144915, at *5 (W.D.N.Y. Jan. 10, 2023) (emphasis in original), *appeal dismissed*, No. 22-3058, 2024 WL 2525332 (2d Cir. May 24, 2024) (summary order); *Ozga v. Elliot*, 150 F. Supp. 3d 178, 189 (D. Conn. 2015) (same).

> A police officer has arguable reasonable suspicion if either (a) it was objectively reasonable for the officer to believe that reasonable suspicion existed, or (b) officers of reasonable competence could disagree on whether the reasonable suspicion test was met.  Put another way, an arresting officer will find protection under the defense of qualified immunity unless no reasonably competent officer could have concluded, based on the facts known at the time of arrest, that reasonable suspicion existed.

*Stewart v. Davis*, 738 F. Supp. 3d 361, 368 (S.D.N.Y. 2024).  Here, the body camera footage shows that the windows were dark enough that it was objectively reasonable for the officers to believe reasonable suspicion of a traffic violation existed.  *Cf. Holeman*, 425 F.3d at 191 n.2 (tinted windows would justify stop if so dark that officer, acting reasonably, would have suspected traffic violation).  Thus, Defendants had at least arguable reasonable suspicion and are entitled to qualified immunity.

Defendants are therefore entitled to summary judgment on Plaintiff's Fourth Amendment claim based on the initial stop.

### B.        Extension of Traffic Stop - Dog Sniff

Plaintiff also challenges Defendants' conduct beyond the initial stop, as he alleges Defendants unreasonably prolonged the stop, including through the dog sniff, in violation of the Fourth Amendment.  (P's Opp. at 12-13, 16-17.)  Defendants argue they are entitled to summary judgment on this claim because they had reasonable suspicion of criminal activity which justified the extension of the traffic stop.  (Ds' Mem. at 8-9.)

"A seizure justified only by a police-observed traffic violation[] . . . becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation."  *Rodriguez v. United States*, 575 U.S. 348, 350-51 (2015).  A traffic stop may only be extended for investigatory purposes beyond traffic-related tasks if an officer develops reasonable suspicion of criminal activity supported by specific and articulable facts.  *See United States v. Foreste*, 780 F.3d 518, 523 (2d Cir. 2015); *United States v. Caraballo*, No. 20-CR-137, 2024 WL 1521614, at *4 (D. Conn. Apr. 9, 2024).  "[A] dog sniff is not fairly characterized as part of [an] officer's traffic mission," and instead "is a measure aimed at detecting evidence of ordinary criminal wrongdoing."  *Rodriguez*, 575 U.S. at 355-56.  Thus, in order to conduct a dog sniff of a vehicle following the conclusion of the traffic-related tasks, officers must have reasonable suspicion of criminal activity.  *See United States v. Zayas*, No. 22-CR-178, 2022 WL 16737223, at *8 (S.D.N.Y. Nov. 7, 2022); *United States v. Frith*, No. 02-CR-733, 2017 WL 2266986, at *2 (S.D.N.Y. May 1, 2017).

Defendants do not dispute that the dog sniff here extended the stop beyond the time required to complete the tasks related to the justification for the stop:  the window tints.  Instead,

15

Defendants argue they had reasonable suspicion to extend the stop to complete the K-9 sniff based on the following facts:  (1) Plaintiff had illegally tinted windows; (2) Plaintiff's vehicle had an electronically-operated license plate cover, which Trooper Reiser testified is commonly used by people who commit crimes; (3) Plaintiff's route of travel did not make sense to Trooper Reiser; (4) Plaintiff had a Connecticut driver's license but Trooper Reiser knew that Plaintiff resided in or was associated with several residences in the Town of LaGrange, New York; (5) an incarcerated individual had communicated with Plaintiff about brokering a large amount of cocaine from the incarcerated individual's girlfriend to a third party, and Trooper Reiser conducted another traffic stop in relation to those phone calls in which he seized a suspect with over 100 grams of cocaine; (6) Plaintiff had a South Dakota license plate and registration; (7) in the same area less than a year prior, Trooper Reiser had arrested the operator of a stolen Mercedes bearing a Wisconsin wholesaler license plate belonging to Plaintiff's LLC; and (8) there was an odometer discrepancy, which Trooper Reiser testified is a sign of criminal activity. (Ds' Mem. at 2-3, 8-9.)  Plaintiff does not dispute these facts, but rather argues that his plate cover, route of travel, Connecticut license plate, and place of residence, as well as the odometer discrepancy, are not themselves illegal, and Defendants did not have any alert that Plaintiff's vehicle was stolen.  (P's Opp. at 13; *see* P's 56.1 Resp. ¶ 10 (denying allegation that Trooper Reiser gained reasonable suspicion based on these facts but stating only that plate cover is not illegal and illegal tint does not provide reasonable suspicion to search).)

As explained, "[r]easonable suspicion must be based on specific and articulable facts, and courts must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Frith*, 2017 WL 2266986, at *2.  "While the court cannot merely defer to police officers' judgment in

16

assessing reasonable suspicion, it must view the totality of the circumstances through the eyes of a reasonable and cautious police officer on the scene." *United States v. Lloyd*, No. 17-CR-119, 2018 WL 4627149, at *6 (W.D.N.Y. Apr. 9, 2018), *report and recommendation adopted sub nom.*, *United States v. Dunnigan*, No. 17-CR-119, 2018 WL 3196953 (W.D.N.Y. June 29, 2018); *see Zayas*, 2022 WL 16737223, at *9 ("Factors that give rise to reasonable suspicion are considered and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."). Factors that are not illegal by themselves may provide reasonable suspicion when taken together. *United States v. Sokolow*, 490 U.S. 1, 9 (1989).

First, Plaintiff's illegal tints and electronic plate covers support reasonable suspicion of criminal activity beyond the traffic violation itself. Tinted windows may contribute to a finding a reasonable suspicion. *See, e.g.*, *Forbes*, 2024 WL 329080, at *6 (on plaintiff's motion for summary judgment, defendants set forth facts showing genuine issue as to whether officers had reasonable suspicion of criminal activity where they could not see the occupants of vehicle through tinted windows); *United States v. Holloway*, No. 24-CR-238, 2025 WL 2977120, at *20 (M.D. Pa. Oct. 21, 2025) ("[A d]ark window tint and obscured license plates can help establish reasonable suspicion that the vehicle contains drugs or other contraband."). And courts in other circuits have found that license plate covers support a finding of reasonable suspicion where officers testify that, based on their experience, such covers are used to evade law enforcement. *See Holloway*, 2025 WL 2977120, at *20; *United States v. Glenn*, 204 F. Supp. 3d 893, 903 (M.D. La. 2016), *aff'd*, 931 F.3d 424 (5th Cir. 2019); *see also Frith*, 2017 WL 2266986, at *3 (that plaintiff was driving car with bar code sticker removed from rental car window supported finding of reasonable suspicion where officer testified that in his experience, people who remove such stickers do so to avoid scrutiny). Here, Trooper Reiser testified that

17

tinted windows and Plaintiff's electronic plate covers are indicators that a vehicle is being used in connection with criminal activity.  (Reiser Depo. at 27:3-9, 42:19-22.)  Although Trooper Viti testified that the tints did not play a role in establishing reasonable suspicion for the dog sniff, (Viti Depo. at 49:24-50:3), he did testify that electronic plate covers are indicators of criminal activity, (*id.* at 30:5-25, 31:13-17, 32:7-17), and later testified that the other factors in combination with the tinted windows led to a higher level of suspicion, (*id.* at 50:11-17).[8]  Thus, these factors reasonably contributed to the officers' suspicion.

Plaintiff's route of travel also reasonably contributed to Defendants' reasonable suspicion.  The Second Circuit has "long recognized that reasonable suspicion may be based, at least in part, on an implausible story, an implausible explanation of the purpose of a trip, or a story that simply does not ring true."  *United States v. Santillan*, 902 F.3d 49, 57 (2d Cir. 2018).  Although an illogical travel route standing alone has been found insufficient to establish reasonable suspicion, *see United States v. Parks*, No. 19-CR-87, 2022 WL 1819383, at *10 (W.D.N.Y. June 3, 2022) (no reasonable suspicion where only fact officer considered suspicious was illogical travel route), it may contribute to a finding of reasonable suspicion when considered together with other factors, *see, e.g.*, *United States v. Gonzalez*, No. 22-CR-40119, 2023 WL 6058876, at *9 (D.S.D. Sept. 18, 2023) ("[A] confusing or illogical itinerary may give rise to reasonable suspicion to extend a stop and deploy a drug dog."), *aff'd*, 133 F.4th 819 (8th Cir. 2025); *United States v. Rizzo*, 839 F. App'x 164, 165-66 (9th Cir. 2021) (reasonable suspicion supported by fact that defendant took route appearing inconsistent with possible innocent explanation); *United States v. Torres*, 786 F. App'x 726, 738 (10th Cir. 2019) (totality

---

[8] Trooper Viti also testified that he was not the officer responsible for making the determination about whether to use the K-9.  (*See* Viti Depo. at 27:4-16, 33:4-12; *see also* Porteus Depo. at 35:13-14 (stating it was up to Trooper Reiser on how stop was conducted).)

of circumstances including that defendant was traveling on an unusually southerly route to reach state believed to be his destination based on state listed on driver's documents may provide officer reasonable suspicion); *Moore v. Bitca*, No. 19-CV-35, 2020 WL 5821378, at *17-19 (D. Vt. Sept. 30, 2020) (totality of circumstances, which included route of travel officer found illogical, established that defendant had reasonable suspicion and lawfully prolonged stop). Thus, Trooper Reiser's assessment that Plaintiff was taking an unusual or illogical route to reach his stated destination contributes to reasonable suspicion. (*See* Reiser Depo. at 27:10-22; Viti Depo. at 34:23-35:9, 49:5-10.)

Similarly, that Plaintiff had a Connecticut driver's license and represented to Trooper Reiser that he lived in Connecticut when Trooper Reiser had reason to believe he lived in New York, (Reiser Depo. at 44:3-8), contributed to the officers' reasonable suspicion, *see Santillan*, 902 F.3d at 57 (reasonable suspicion may be based on story that does not ring true); *Walker v. Carrozzo*, 664 F. Supp. 3d 490, 511 (S.D.N.Y. 2023) (defendant's lies about travel which officers knew to be false combined with other factors may contribute to reasonable suspicion to warrant detention); *cf. Chambers v. Lombardi*, No. 17-CV-7557, 2020 WL 2097558, at *8 (S.D.N.Y. May 1, 2020) (officer had probable cause to search vehicle based on surveillance and answers plaintiff gave to officers regarding origin and destination of his trip which officers knew to be false); *United States v. Dunnigan*, No. 17-CR-119, 2019 WL 5257572, at *8 (W.D.N.Y. Oct. 17, 2019) (officers had probable cause to search vehicle based on totality of circumstances including defendant's statements about his travel plans that law enforcement knew to be false), *aff'd*, No. 23-6353, 2025 WL 470300 (2d Cir. Feb. 12, 2025) (summary order).

Further, Trooper Reiser testified that he was aware that an incarcerated individual had communicated with Plaintiff about brokering a large amount of cocaine from the incarcerated

19

individual's girlfriend to a third party.  (Reiser Depo. at 45:6-13.)  Investigative knowledge

combined with other factors supports reasonable suspicion.  *See United States v. Churchill*, 792

F. App'x 39, 41-42 (2d Cir. 2019) (summary order) (decision to extend traffic stop to investigate

burglary supported by numerous objective facts including that defendant had previously been

investigated and arrested in connection with property crimes); *United States v. Hernandez*, No.

23-CR-109, 2025 WL 3647876, at *6 (W.D.N.Y. Oct. 10, 2025) (officers had reasonable

suspicion based on knowledge that defendants may have been traveling for purpose of

transporting narcotics plus officers' observations and thus extension of stop to conduct K-9

search was lawful), *report and recommendation adopted*, 2025 WL 3643698 (W.D.N.Y. Nov. 6,

2025); *Zayas*, 2022 WL 16737223, at *9-10 (investigative knowledge plus defendants' nervous

behavior supported reasonable suspicion and extension of stop for K-9 search).  Trooper Reiser's

knowledge of a previous narcotics investigation involving Plaintiff, combined with the other

factors, could reasonably contribute to his reasonable suspicion of criminal activity.

Additionally, out-of-state license plates, in combination with other factors, may also

contribute to reasonable suspicion.  *See, e.g.*, *Brace v. Johnson*, No. 22-590, 2023 WL 2027274,

at *1-2 (2d Cir. Feb. 16, 2023) (summary order) (officers had reasonable suspicion to stop truck

where it had out-of-state license plate despite New York state sticker in window and officers

testified that it was common for stolen vehicles to have out-of-state plates); *United States v.*

*Bayless*, 201 F.3d 116, 133-34 (2d Cir. 2000) (sometimes innocuous factor of out-of-state license

plates took on added significance when joined to furtive loading of car and strengthened

likelihood of drug transaction).  This fact takes on added significance here where Trooper Reiser

knew that Plaintiff lived in New York but had a Connecticut driver's license and South Dakota

plates, and Trooper Reiser had recently arrested another individual in the same area in a stolen

20

car with out-of-state wholesaler license plates owned by Plaintiff's LLC. (Reiser Depo. at 28:23-29:11, 43:21-44:8, 45:13-17.) It is reasonable for an officer to infer from knowledge of illicit activity in the area that an individual found in similar circumstances may also be engaged in that same unlawful activity. *Cf. Moore*, 2020 WL 5821378, at *17 (tip from month prior about suspected drug dealing in same area where plaintiff was found with another vehicle was sufficient to support reasonable concern that plaintiff may have been present for drug dealing purposes).

It was also reasonable for the officers to rely on the odometer discrepancy as a factor contributing to reasonable suspicion. Courts have found that discrepancies in a vehicle's mileage may provide an officer with reasonable suspicion, *cf. United States v. Herrera*, No. 10-CR-37, 2011 WL 739088, at *9 (M.D. Ala. Feb. 24, 2011) (high mileage on newly registered vehicle, among other factors, provided officer with reasonable suspicion justifying prolonged traffic stop), and the Second Circuit has upheld a finding of reasonable suspicion where officers testified that they believed the plaintiff's vehicle exhibited signs of a stolen vehicle or other criminal activity based on their training and experience, *see Brace*, 2023 WL 2027274, at *2 (officers reasonably concluded vehicle violated traffic code where they testified that in their experience plaintiff's vehicle exhibited signs of stolen vehicle). Similarly, here, the officers testified that based on their experience, an odometer discrepancy is a sign of a stolen vehicle or other related crimes. (Reiser Depo. at 29:12-30:6; *see* Viti Depo. at 36:4-24.) Plaintiff offers no facts to dispute the odometer discrepancy or the officers' testimony.[9]

---

[9] While the suspicions about the car being stolen would not justify the dog sniff, which is aimed at narcotics activity, it would justify extending the stop for further inquiry.

21

Although Plaintiff argues that it is not illegal to do many of the things that Defendants cite to support reasonable suspicion, "the availability of an innocent explanation does not create an issue of fact as to the reasonableness of the suspicion." *Sutton v. Duguid*, No. 05-CV-1215, 2007 WL 1456222, at *6 (E.D.N.Y. May 16, 2007); *see Churchill*, 792 F. App'x at 42 ("Conduct that is as consistent with innocence as with guilt may provide the basis for reasonable suspicion where there is some indication of possible illicit activity."). When taken together, such facts provide a sufficient basis for finding reasonable suspicion. *See Lilly v. Town of Lewiston*, 449 F. Supp. 3d 190, 198 (W.D.N.Y. 2020) ("It is sometimes the case that a police officer may observe a series of acts, each of them perhaps innocent in itself, but which taken together warrant further investigation."); *Frith*, 2017 WL 2266986, at *3 (even though facts may be susceptible to innocent explanation and not dispositive on their own, taken together they provide sufficient basis for finding reasonable suspicion). Accordingly, based on the facts outlined by Trooper Reiser and explained above, there is no genuine dispute as to whether the officers had reasonable suspicion to prolong the stop and undertake the K-9 sniff.

Plaintiff also argues that the facts Trooper Reiser listed as his basis for reasonable suspicion were unrelated to the prolongation of the stop because this was a "walled-off" stop. (P's Opp. at 15.) "A 'walled-off' stop occurs when a police officer lawfully stops a vehicle for a traffic violation but does so at the request of narcotics investigators who suspect that the occupants are involved in drug trafficking." *See Caraballo*, 2024 WL 1521614, at *2 n.1. Even if the actual motivation of the officers was relevant, which (as discussed above) it is not, there is no evidence that this was a walled-off stop. None of the Defendants testified that they stopped Plaintiff pursuant to a narcotics investigation and Plaintiff provides nothing to back up this allegation.

Additionally, Plaintiff argues that the officers did not have reasonable suspicion because they testified that they had "founded suspicion" rather than reasonable suspicion to detain Plaintiff. (P's Opp. at 14-16.)[10]  But this testimony is irrelevant, because "the [reasonable suspicion] inquiry is an objective one, so that the issue is not centered on [Defendants'] subjective motivation but rather whether a reasonable officer would suspect unlawful activity under the totality of the circumstances." *Forbes*, 2024 WL 329080, at *7.  Courts are not bound by the beliefs of the arresting officers as to whether they had reasonable suspicion.  *Cf. United States v. Tramontana*, 460 F.2d 464, 466-67 (2d Cir. 1972) (finding, based on the facts available to the officers at the moment of arrest, that "[the officer's] suspicions properly rose to the level of probable cause, regardless of his own legal characterization of his actions"); *Sementes v. Lamont*, No. 20-CV-1826, 2023 WL 1818544, at *4 (D. Conn. Feb. 8, 2023) ("[A]n officer's subjective belief as to whether probable cause existed is irrelevant."); *Ashley v. City of N.Y.*, No. 14-CV-5559, 2017 WL 2972145, at *6 n.5 (E.D.N.Y. July 12, 2017) ("[Defendant]'s subjective belief as to whether, and at what point, he had probable cause to make the arrest is irrelevant . . . ."), *aff'd in part, vacated in part, remanded*, 992 F.3d 128 (2d Cir. 2021); *DiStefano v. Sedita*, No. 11-CV-1125, 2014 WL 349251, at *7 (E.D.N.Y. Jan. 31, 2014) (that officer did not believe he had probable cause to arrest was irrelevant because an officer's subjective belief is immaterial to the court's probable cause inquiry).  Thus, that Defendants testified they had "founded suspicion" does not create a genuine issue of material fact as to whether they in fact had reasonable suspicion.

---

[10] Under New York state law, "founded suspicion" permits an officer to inquire about possible criminal activity without using force, whereas reasonable suspicion is required for a forcible stop and detention of a suspect. *People v. De Bour*, 40 N.Y.2d 210, 223 (1976).  New York law is irrelevant here, as Plaintiff brings only federal claims.

But even if Defendants did not have reasonable suspicion to prolong the stop by bringing K-9 Dunn to sniff the exterior of the vehicle, they at least had arguable reasonable suspicion to do so, and are therefore entitled to qualified immunity. (*See* Ds' Mem. at 12 (arguing Defendants entitled to qualified immunity).) As discussed above, when police officers "conduct a limited investigative detention, they have qualified immunity so long as they had at least *arguable* reasonable suspicion to warrant the limited detention." *See Kistner*, 2023 WL 144915, at \*5 (emphasis in original); *Ozga*, 150 F. Supp. 3d at 189 (same). "Certainly no clearly established case law holds that the combination of the[] facts [relied upon by Trooper Reiser] is not enough; and many cases find [reasonable suspicion] where the police draw comparable inferences from facts of comparable suggestiveness." *Holeman*, 425 F.3d at 191; *see Lilly v. Stafford*, No. 18-CV-2, 2021 WL 3741590, at \*7 (W.D.N.Y. Aug. 24, 2021) ("There is no clearly established law such that would compel every reasonable officer to conclude that [Defendant] lacked arguable reasonable suspicion on the circumstances presented and violated Plaintiff's Fourth Amendment rights."). Thus, for the reasons explained above, there is no genuine issue of material fact as to whether Trooper Reiser's belief that he had a sufficient basis to conduct a K-9 sniff was objectively reasonable. At the very least, officers of reasonable competence could disagree on whether the reasonable suspicion test was met.

Plaintiff argues that Defendants are not entitled to qualified immunity because they acted in bad faith by targeting Plaintiff and extending the stop without reasonable suspicion or even founded suspicion. (P's Opp. at 17.) He appears to argue that the officers acted in bad faith because they used the standard of founded suspicion while knowing that they needed reasonable suspicion. (*Id.* at 16.) But as already explained, the officers' subjective belief about whether they had reasonable suspicion is irrelevant to the objective reasonable suspicion inquiry, and the

standard for qualified immunity is likewise objective.  Thus, that Defendants testified that they had founded suspicion does not suggest bad faith, negate reasonable suspicion, or disqualify them from qualified immunity.

Accordingly, for the reasons set forth above, Defendants are entitled to summary judgment on Plaintiff's false arrest claim based on the extension of the stop and the dog sniff.

### C.    Search of Plaintiff's Vehicle

Plaintiff also brings claims for false arrest and unreasonable search and seizure based on the search of his vehicle.  (*See, e.g.*, AC ¶¶ 37-38, 51-67.)[11]  Defendants argue they are entitled to summary judgment on this claim because K-9 Dunn alerted to the presence of a narcotic odor, giving the officers probable cause to search the vehicle.  (Ds' Mem. at 9-12.)  Plaintiff argues there is no evidence that K-9 Dunn alerted and that Defendants are acting in bad faith by falsely claiming that he did.  (P's Opp. at 13-14, 15-17.)

Under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if probable cause exists to believe it contains contraband or other evidence of a crime.  *See United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004).  "A canine's positive indication for narcotics is sufficient to provide probable cause."  *Zayas*, 2022 WL 16737223, at *10; *see Florida v. Harris*, 568 U.S. 237, 246-47 (2013) ("If a *bona fide* organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search.").

---

[11] The false arrest claim seems to be based on Plaintiff's detention during the search of the car following the dog sniff.

Trooper Reiser testified that K-9 Dunn alerted to the presence of a narcotic odor.  (Reiser Depo. at 33:6-16, 39:2-25.)  Specifically, Trooper Reiser testified that K-9 Dunn's tail pointed straight up and wagged, his head snapped backwards, he did a more detailed search around the door seam of Plaintiff's vehicle, and he then scratched at the bottom of the door seam.  (*Id.* at 33:6-16, 39:2-40:21.)  It is undisputed that K-9 Dunn was a member of the New York State Police Canine Unit and was trained to alert his handler, Trooper Reiser, to the presence of narcotic odors.  (Ds' 56.1 Stmt. ¶¶ 12, 19; *see* ECF No. 44-9 (detailing K-9 Dunn's training and certifications).)  But Plaintiff disputes that K-9 Dunn scratched the door seam, arguing that no scratch can be seen on the body camera footage, and that the other Defendants did not observe an alert when they watched the video.  (P's 56.1 Resp. ¶¶ 14-17; P's Opp. at 16-17.)

Plaintiff is correct that the dog's scratch is not visible on Trooper Reiser's body cam video, but his argument that Defendants did not observe an alert is misleading.  Trooper Porteus testified that he did not see K-9 Dunn scratch when he watched the body camera footage at his deposition, but he explained that he could not see all of K-9 Dunn's body because the video is cut off.  (*See* Porteus Depo. at 42:23-43:2, 44:10-20, 45:24-46:5.)  Trooper Porteus further testified that he was not able to discern whether K-9 Dunn alerted because "it's K-9 specific to [his] handler."  (*Id.* at 45:16-23; *see id.* at 26:10-12, 30:11-24.)  Trooper Reiser similarly testified that only a K-9's certified handler can determine whether the dog alerts, and that the scratch was not captured in the frame of the video.  (Reiser Depo. at 17:8-18:2, 40:22-41:4, 47:6-18.)  Indeed, neither the dog's paws nor the bottom of the car door, where the dog allegedly scratched, (*see* Reiser Depo. at 39:2-25), are visible on the body cam footage at the relevant time, (*see* Reiser Body Cam. at 19:31:26-29).  Further, although Trooper Viti testified that he did not see K-9 Dunn scratch when he reviewed the video, he also testified that he was speaking only in the

26

sense of a regular dog scratch and that he was not qualified to testify as to whether a K-9 had alerted because he was not trained in such alerts.  (Viti Depo. at 20:23-21:10, 43:4-25, 46:13-47:4.)  Plaintiff offers no evidence to rebut any of this testimony.

And while the Court may not weigh evidence or make credibility findings, and thus must disregard evidence favorable to the moving party that a jury is not required to believe, such as the testimony of an interested witness like Trooper Reiser, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 227-28 (2d Cir. 2024), a Court may nonetheless grant summary judgment where the non-moving party offers no evidence to counter that testimony or otherwise create a genuine issue of material fact, *see Bassi v. N.Y. Med. Coll.*, No. 19-CV-7542, 2023 WL 2330478, at *10 n.4 (S.D.N.Y. Mar. 2, 2023) ("[T]he testimony of an interested witness does not necessarily preclude a grant of summary judgment, especially where that testimony is uncontradicted and unimpeached."), *aff'd*, No. 23-278, 2024 WL 3717317 (2d Cir. Aug. 8, 2024) (summary order); *Keeney v. Brinkman*, No. 16-CV-167, 2019 WL 580586, at *2 (W.D.N.Y. Feb. 13, 2019) ("[N]ot every motion for summary judgment based solely on testimony from interested witnesses must be denied. Rather, the party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion."); *Kendrick v. Greenburgh Hous. Auth.*, No. 07-CV-5859, 2011 WL 1118664, at *8 (S.D.N.Y. Mar. 22, 2011) (plaintiff's claim must fail even if court disregards testimony of interested witnesses because plaintiff did not set forth any evidence to support his claim).  The non-moving party "may not rely on mere speculation or conjecture as to the true nature of the facts," and must do more than "recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."  *Keeney*, 2019 WL 580586, at *2-3; *see Valenzuela*

*v. Putnam County*, No. 17-CV-8923, 2020 WL 5370195, at *5 (S.D.N.Y. Sept. 8, 2020) ("The non-movant must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.").

Here, Plaintiff testified that he did not see K-9 Dunn scratch the car, (P's Depo. at 24:4-7, 127:16-128:5), but he does not dispute that he was standing on the other side of the car such that he was unable to see K-9 Dunn at the time of the alleged scratch, (P's 56.1 Resp. ¶ 16), and it seems clear from the body camera footage that Plaintiff would not have been able to see K-9 Dunn from where he was standing, (*see* Viti Body Cam at 19:34:53, 19:44:42 (showing view of car and Trooper Reiser behind car from sidewalk where Plaintiff was standing)). The video also shows that Plaintiff was not looking at the car for the duration of the dog sniff, (*see* Porteus Body Cam at 19:30:37-31:35), including when Trooper Reiser says the dog alerted, (*compare id.* at 19:31:08-28 (Plaintiff not looking at car), *with* Reiser Body Cam at 19:31:08-28 (showing when K-9 allegedly alerted).) He does not present any other evidence to refute Trooper Reiser's testimony; he merely argues that Defendants misrepresented that K-9 Dunn scratched, which is insufficient. *See Keeney*, 2019 WL 580586, at *3 ("Simply asserting that a party is lying is insufficient to create a genuine issue of material fact."). Although Plaintiff also points to the video, the video does not refute Trooper Reiser's testimony, because K-9 Dunn is not fully visible during the entire exterior sniff. (*See* Reiser Body Cam. at 19:30:36-31:29.) Thus, that the video does not show the scratch does not mean it did not occur or that Trooper Reiser misrepresented the facts, and Plaintiff's hope that the jury might disbelieve Trooper Reiser's testimony does not create an issue of fact. *See Anderson*, 477 U.S. at 256-57 ("discredited testimony" not normally sufficient basis for drawing contrary conclusion; "[i]nstead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary

28

judgment"); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 553 (E.D.N.Y. 2012) (Weinstein, J.) (inference based on disbelief of witness does not alone satisfy party's burden to produce facts necessary to defeat motion for summary judgment); *Brawner v. Allstate Indem. Co.*, No. 07-CV-482, 2008 WL 2157011, at *3 (E.D. Ark. May 21, 2008) ("[D]isbelief alone does not provide the substantive factual evidence required to sustain . . . a . . . claim on summary judgment.").

The Fourth Circuit held that a defendant officer was entitled to summary judgment in a similar case in which the plaintiff failed to present evidence rebutting the officer's testimony that a K-9 alerted on his vehicle. *See Varner v. Roane*, 981 F.3d 288, 294-95 (4th Cir. 2020). There the officer testified that his K-9 gave a positive alert by pressing his nose against the car, which is how the dog was trained to alert to drugs. *See id.* at 294. The plaintiff asserted, however, that the dog only alerted when the officer slapped the side of the vehicle. *See id.* The court found that plaintiff's assertion was speculative and unsupported, because he knew nothing about drug-sniffing dogs generally nor about this particular K-9's training and was not standing in a position where he could even see the alert that the officer testified had occurred. *See id.* Because plaintiff's assertion was not based on personal observation, his unsupported speculation could not rebut the officer's testimony that the K-9 alerted on the side of the car facing away from the plaintiff. *See id.* at 294-95. The court thus held that the plaintiff had failed to create a genuine dispute of material fact and affirmed the district court's grant of summary judgment to defendants. *See id.* at 295.

The same reasoning applies here. Plaintiff's assertion that K-9 Dunn did not alert is not based on his personal observation but rather unsupported speculation, which is insufficient to rebut Trooper Reiser's testimony. Plaintiff has failed to establish that a genuine issue of material fact exists as to whether K-9 Dunn alerted to the presence of a narcotic odor. Accordingly,

29

Plaintiff has also failed to create a genuine dispute of material fact as to whether the officers had probable cause to search Plaintiff's vehicle.  Thus, Defendants are entitled to summary judgment on Plaintiff's false arrest and unlawful search and seizure claims based on the search of his vehicle.[12]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 41), enter judgment in favor of Defendants, and close the case.

**SO ORDERED.**

Dated:  June 22, 2026
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[12] Moreover, even if there were a genuine dispute as to whether K-9 Dunn alerted, Troopers Viti and Porteus would be entitled to summary judgment on the illegal search/false arrest claim.  Viti and Porteus were entitled to act based on Trooper Reiser's representation that K-9 Dunn alerted to the vehicle, (Porteus Depo. at 13:24-14:13; Viti Depo. at 46:19-47:4), because "police officers are entitled to rely on the allegations of fellow police officers in making a probable cause determination," *McKinley v. Crevatas*, No. 20-CV-3606, 2023 WL 4364182, at *6 (S.D.N.Y. July 6, 2023).  Although an officer may not rely on another officer's statements "when he harbors significant doubts about the credibility of those statements," *id.*, there is no evidence in the record that either officer had or should have had such doubts, (*see* Porteus Depo. at 45:10-15).  Accordingly, Troopers Viti and Porteus are entitled to qualified immunity.  *See Ramos v. City of N.Y.*, No. 15-CV-6085, 2017 WL 3267736, at *7 (S.D.N.Y. July 31, 2017) (officers entitled to qualified immunity on unreasonable search and seizure claim where they relied on another officer's observations and report), *on reconsideration*, 2017 WL 3575697 (S.D.N.Y. Aug. 17, 2017); *Alicea v. City of N.Y.*, No. 13-CV-7073, 2016 WL 2343862, at *6 (S.D.N.Y. May 3, 2016) (officer entitled to qualified immunity because he was entitled to rely on representations of fellow officers when verifying arrest such that no reasonable jury could find officer's actions unreasonable); *Campanaro v. City of Rome*, 999 F. Supp. 277, 281 n.6 (N.D.N.Y. 1998) (officers entitled to qualified immunity because it would be reasonable for them to rely on representations of fellow officer as to existence of probable cause to arrest).